UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JAMES DALLAS,

                Plaintiff,

        -against-

C.O. SIMON VOSBURGH,              Case No. 18-CV-00336-FPG
C.O. ROBERT REINARD,
C.O. JOHN SCHUCK,
C.O. MATTHEW WILSON and
SGT. ANTHONY OLLES,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFF'S MEMORANDUM OF LAW
IN PARTIAL OPPOSITION TO DEFENDANT
VOSBURGH'S MOTION TO DISMISS**

Dated:  New York, New York
        October 29, 2018

*Sivin & Miller, LLP*
*Attorneys for plaintiff*
*20 Vesey Street, Suite 1400*
*New York, NY  10007*
*(212) 349-0300*

# PRELIMINARY STATEMENT

This Memorandum of Law is submitted by plaintiff in partial opposition to the motion of defendant C.O. Simon Vosburgh (Vosburgh) for an order dismissing plaintiff's complaint against Vosburgh.  Plaintiff does not oppose that portion of Vosburgh's motion that seeks to dismiss the Fourth Cause of Action (State Law Cause of Action for Battery) asserted against Vosburgh in plaintiff's complaint, as plaintiff acknowledges that the one-year statute of limitations for that cause of action had expired as of the commencement of this lawsuit.

Plaintiff opposes the balance of Vosburgh's motion to dismiss, as service of process was properly effected on Vosburgh.  Additionally, Vosburgh has failed to make a *prima facie* showing that the statutes of limitations for plaintiff's Fifth Cause of Action (State Law Cause of Action for Intentional and Malicious Action) and Sixth Cause of Action (Malicious Abuse of Process) had expired as of the filing of this lawsuit.

# STATEMENT OF FACTS

This action arises out of a so-called "use-of-force" incident that occurred at Attica Correctional Facility (Attica).  Plaintiff alleges in his complaint that on April 30, 2015 he was brutally beaten by several Attica corrections officers, including Vosburgh, without legal justification.  The complaint also alleges that Vosburgh and the other defendants thereafter falsely and maliciously accused plaintiff of assaulting staff, which accusations resulted in severe punitive measures against plaintiff, including but not limited to being sentenced to the Special Housing Unit (SHU) at Attica.

An investigation of the incident by the New York State Department of Corrections and Community Supervision's Office of Special Investigations (OSI) resulted in a Final Investigative Report that substantiated plaintiff's claims of assault by staff and implicitly

rejected Vosburgh's denial that he and other officers assaulted plaintiff. *See Final Investigative Report, Exhibit 1 to October 29, 2018 Declaration of Edward Sivin (Sivin Declaration).* The OSI Final Investigative Report begins with the following Summary of Investigative Findings: "This investigation revealed **overwhelming evidence** to corroborate the allegation of inmate James Dallas 07A6502 being assaulted by staff at Attica Correctional Facility." [emphasis added].

Plaintiff also has a companion Claim (*see Exhibit 2 to Sivin Declaration*) pending in the New York State Court of Claims arising out of the April 30, 2015 incident involving Vosburgh and the other corrections officers. *Sivin Declaration, ¶ 5.* That Claim has been pending since October 16, 2015. *Id.* New York State Assistant Attorney General Thomas Ramsay (Ramsay) has been defending that Claim on behalf of the State of New York. *Id.*

The instant lawsuit was commenced by the filing of plaintiff's complaint on March 13, 2018. *See Docket Entry No. 1.* Two days later, plaintiff notified Ramsay via email that the federal lawsuit had been commenced against Vosburgh and the other defendants. *Sivin Declaration, ¶ 6.* Plaintiff also inquired of Ramsay whether, in light of the fact that the New York State Attorney General was defending the companion Claim in the Court of Claims, his office would accept service of the summons and complaint in the federal action on behalf of Vosburgh and the other named corrections officers. *Id.* Over the next several months, a series of emails (*see Exhibit 3 to Sivin Declaration*) was exchanged between plaintiff and various attorneys from the AG's office, as well as Vosburgh's current attorney, Patrick J. Mackey, Esq., regarding who would be representing Vosburgh in this lawsuit and when an answer would be interposed on behalf of Vosburgh. *Id.* Throughout those exchanges plaintiff repeatedly was asked to extend Vosburgh's time to respond to the complaint pending resolution of the issue of

2

representation, and plaintiff consented to all of those requests.  *Id.*  In a May 30, 2018 email,

AAG David J. Sleight also acknowledged the following:  "Service was made **on all defendants**

on 4/26 & 27 pursuant to CPLR 308(2) (suitable age and discretion, and mailing)"  *Id.*

[emphasis added].

On September 11, 2018, plaintiff agreed via email to yet a further extension of

Vosburgh's time to answer to September 30, 2018.  On September 28, 2018, two days before the

expiration of that last extension, Vosburgh filed the instant motion to dismiss, alleging for the

first time that he was not properly served with the summons and complaint pursuant to CPLR

308(2).  *Id.,* ¶ 7.  In his motion, Vosburgh challenges on various grounds the May 1, 2018

affidavit of plaintiff's process server, Ted Kwiatkowski.

Annexed as Exhibit 4 to the Sivin Declaration is the October 16, 2018 Declaration

of Ted Kwiatkowski, setting forth in greater detail the facts and circumstances surrounding his

service of the summons and complaint on Vosburgh.[1]  In his Declaration, Kwiatkowski states the

following under penalty of perjury:

> I am a process server within the State of New York, and work for
> Smart Service Process Service (SSPS), in Depew, NY.  On April
> 27, 2018, I served a copy of the summons and complaint in this
> matter on defendant C.O. Simon Vosburgh at Wende Correctional
> Facility (Wende), 3040 Wende Road, Alden, NY  14004.  Service
> was effected as follows:
>
> I arrived at Wende on April 27, 2018 at approximately 12:15 p.m.
> Upon arrival, I took a photograph of the facility, a copy of which is
> annexed to this Declaration.  I routinely take photographs of the
> locations at which I effect service in case there is a challenge to
> that service; the photograph proves that I was at the location.
> Since I knew that cameras are not allowed inside the actual
> premises of Wende, I took a photograph of the outside of the
> facility.

---

[1] It bears note that while Kwiatkowski served all of the defendants pursuant to CPLR 308(2), *see Docket Entries Nos. 5, 6, 7, 8, and 9,* none of the other defendants has asserted an affirmative defense of lack of personal jurisdiction or otherwise claimed that he was not properly served by Kwiatkowski.

After taking the photograph, I was buzzed into the facility and approached the front security desk. I told an officer at the desk that I had legal papers to serve on C.O. Simon Vosburgh. The officer was an African American female between 36 and 49 years of age, between 5' 5" and 5' 8" in height, and between 161 lbs. and 200 lbs. in weight. The officer acknowledged that Officer Vosburgh worked at Wende, but she claimed that he was "not available" to accept service. I then told the officer that I would serve the papers on her, but she told me that refused to accept service.

I then returned to my vehicle and called my office. I was told by my office to try again to serve the papers on the officer, and that if the officer persisted in refusing to accept the papers, I should just leave them with her. I then went back inside the facility and again tried to serve the officer with the papers. She again said that she was refusing to accept them. I asked the officer for her name, but she refused to provide it to me. I then left the papers conspicuously on a desk at the security area, and pointed out to the officer that I was doing so. I then left the facility.

On May 1, 2018, I then mailed an additional copy of the summons and complaint to C.O. Simon Vosburgh, c/o Wende Correctional Facility, 3040 Wende Road, Alden, NY 14004. I mailed the additional copy to Officer Vosburgh by first class mail in a post-paid envelope stamped "personal & confidential," with the return address of "SSPS, 1320 French Rd., Depew, NY 14043." That envelope has never been returned to SSPS.

## ARGUMENT

I.    **VOSBURGH'S MOTION TO DISMISS BASED ON ALLEGED IMPROPER SERVICE OF PROCESS SHOULD BE DENIED**

New York's Civil Practice Law & Rules (CPLR) Section 308(2) provides, in pertinent part, as follows:

Personal service upon a natural person shall be made by any of the following methods:

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business...of the person to be served and by...mailing the summons by first class mail to the person to be served at his or her actual place of business

4

> in an envelope bearing the legend "personal and confidential" and
> not indicating on the outside thereof, by return address or
> otherwise, that the communication is from an attorney or concerns
> an action against the person to be served, such delivery and
> mailing to be effected within twenty days of each other.

Here, the May 1, 2018 Affidavit of process server Ted Kwiatkowski and the October 16, 2018

Declaration of Ted Kwiatkowski demonstrate that service of process on Vosburgh was effected

in strict compliance with CPLR § 308(2).  None of Vosburgh's challenges to that service is

meritorious.

### Wende Correctional Facility Was Vosburgh's "Actual Place Of Business"

Although he acknowledges that he was, and still is, employed as a corrections

officer at Wende Correctional Facility, Vosburgh argues that Wende was not his "actual place of

business" on April 27, 2018 (the day service was effected) because he was "not at work" during

that time due to a work related injury.  *Vosburgh Declaration, ¶ 7.*  Putting aside that Vosburgh

submits no documentation or other proof that he was "not at work" during the time period that

service was effected, the assertion that one's workplace is not one's "actual place of business"

during a period when one is temporarily "not at work" or otherwise absent from one's workplace

is a misstatement of the law.

In *Columbus Realty Inv. Corp. v. Weng-Heng Tsiang, 226 A.D.2d 259 (1st Dept.*

*1996)*, service of process under CPLR 308(2) was challenged on the ground that the person on

whom service was attempted was temporarily out of work due to an injury, and that her place of

employment therefore was not her actual place of business within the meaning of CPLR 308(2).

The lower court rejected that argument, and the Appellate Division affirmed the lower court's

order, noting that it was not significant that "at the time of service [her] actual employment with

the business had been recently suspended to allow her to recuperate from injuries sustained in a

5

car accident…." *Id. at p. 259*. The court also noted that the injured person "later resumed

working for the company…." *Id. at p. 259.* Similarly, in *Edan v. Johnson, 117 A.D.3d 528 (1st*

*Dept. 2014),* where service of process was made pursuant to CPLR 308(2) by leaving the papers

with a person of suitable age and discretion at the defendant's workplace, the defendant

unsuccessfully sought to dismiss the complaint against her on the ground that she was out on

maternity leave and that her usual workplace therefore was not her "actual place of business"

when service was effected.  The court rejected that argument, noting that the fact that the

defendant "was temporarily out on maternity leave when the service was effectuated is of no

moment, since she was clearly identified as a doctor working in the Hercules Medical practice,

and resumed working there after her temporary four-month absence." *Id. at p. 529,* citing

*Columbus Realty Inv. Corp., supra.*

      Here, too, it is undisputed that Vosburgh was an employee of Wende Correctional

Facility on April 27, 2018, the day service was effected, and that he returned to work at Wende

approximately two weeks after service was effected. *See Vosburgh Declaration, ¶ 7* ["I was not

at work from late October 2017, **to the middle of May 2018**"] [emphasis added].  Accordingly,

under the precedent cited above, Wende Correctional Facility indisputably was Vosburgh's

"actual place of business" on April 27, 2018.

      In support of his assertion that Wende was not his "actual place of business" on

April 27, 2018, Vosburgh ignores this established precedent by New York's Appellate Division

and instead relies exclusively on an earlier trial level decision that, in any event, is inapposite.  In

*Seung Ja Cho v. In-Chul Song, 166 Misc. 2d 129 (Sup. Ct. New York County 1995),* the

defendant was on a one-year sabbatical teaching and doing research in Korea when a process

server left a copy of the summons and complaint with a person of suitable age and discretion at

the Brooklyn office at which the defendant had worked prior to being on sabbatical.  Since it was undisputed that the defendant was actually working in Korea, and not in Brooklyn, when service was effected, and that he remained in Korea for approximately one year thereafter, the court, noting that this was "a matter of first impression" and that there was "no case law directly on point," *id. at p. 132*, determined that the Brooklyn office was not the defendant's "actual place of business" when service was effected there, *id. at p. 134*.  Assuming, *arguendo, Cho* provided any support for Vosburgh's position that Wende was not his "actual place of business" when he was temporarily "not at work" there due to his work-related injury, the subsequent decisions in *Columbus Realty Inv. Corp.* and *Edan v. Johnson* definitively rebut that position.

### Kwiatkowski's Affidavit Adequately Identified The Person Served

Vosburgh improperly faults Kwiatkowski for failing to set forth in his Affidavit the name of the person served or a more detailed description of that person.  According to Vosburgh, this makes it "impossible to seek out the person described in the Affidavit of Service to confer with him or her to determine if the pleadings were truly left at the facility."  *See Defendant's Memorandum of Law, pp. 6-7*.  This argument also is without merit, since "nothing within New York's personal service statute, § 308, indicates that the failure to obtain the name of the individual with whom the summons is left invalidates the service."  *Diamond D Constr. Corp. v. N.Y. State DOL, 2004 U.S. Dist. LEXIS 17198, at *54 (W.D.N.Y. 2004)*.  Indeed, when a person of "suitable age and discretion" at the defendant's actual place of business refuses to provide the process server with his or her name, the process server is not required to—and obviously cannot—set forth in the affidavit of service the name of the person served.

Thus, in *Musa v. Badero, 2015 U.S. Dist. LEXIS 177024, at *12 (E.D.N.Y. 2015)*, the court held that service was proper under CPLR 308(2) where the process server's affidavit provided a general description of the person who refused to provide her name:

> Here, plaintiff has satisfied personal service upon Dr. Badero
> under N.Y. C.P.L.R. § 308(2). Plaintiff served the summons and
> complaint on an employee at Dr. Badero's actual place of business,
> who appeared to be approximately thirty years of age.  Such
> service was proper even though the recipient was a co-worker
> who refused to give her name. In addition, plaintiff's affidavit of
> service states that the process server mailed the summons and
> complaint to defendant's actual place of business. Therefore,
> service of process upon Dr. Badero was proper.

*Id. at * 12* [internal citations omitted].

Here, since the person with whom Kwiatkowski left the summons and complaint refused to provide her name, Kwiatkowski obviously could not have included her name in the Affidavit of Service; he therefore properly identified her as "Jane Doe."  Kwiatkowski also included in his Affidavit of Service the race, approximate age, approximate height, approximate weight, and hair color of the woman.  Even were it possible under these hostile circumstances for Kwiatkowski to have obtained a more detailed description of the person he served, nothing in CPLR 308(2) indicates that the failure to include a more detailed description invalidates the service.

Finally, the purported impossibility "to seek out the person described in the Affidavit of Service to confer with him or her to determine if the pleadings were truly left at the facility" is immaterial, as CPLR 308(2) contains no requirement as a condition of proper service that the defendant be able independently to investigate and confirm whether service was proper. Even were there such a requirement, Vosburgh's bald denial that he is "familiar with any specific person working at Wende Correctional Facility who fits the broad physical description provided

8

in the Affidavit of Service," *see Declaration of Simon Vosburgh, ¶ 7*, hardly suffices as a *bona fide* attempt to determine whether such a person was working the front desk at Wende on the date and time in question.  Indeed, neither Vosburgh nor his counsel claims actually to have made any attempt to identify or confer with any corrections officers who were on duty at the front desk at Wende on the date and time in question.  It likely would be a relatively simple task to make inquiries and/or review records from Wende to determine whether on April 27, 2018 at approximately 12:35 p.m.—the date and time when Kwiatkowski effected service—a female, African American corrections officer fitting the general description set forth in the Kwiatkowski Affidavit was assigned to the front desk at Wende.

### Kwiatkowski Properly Left The Papers After Service Was Refused

Vosburgh also argues that Kwiatkowski improperly left the papers at the facility after the corrections officer whom he attempted to serve refused to accept the papers.  In his Declaration, Kwiatkowski explains that after the officer refused to accept service, he "left the papers conspicuously on a desk at the security area, and pointed out to the officer that [he] was doing so."  This was proper service under New York law.

In *Bossuk v. Steinberg, 58 N.Y.2d 916 (1983),* New York's highest court stated that "delivery of a summons may be accomplished by leaving it in the 'general vicinity' of a person to be served who 'resists' service."  *Id. at p. 918.*  The Court asserted that the method of service described by Kwiatkowski—leaving papers in the general area of the person of suitable age and discretion who refused to accept service—is proper under CPLR 308(2):

> [W]e hold that the delivery requirement of <u>CPLR 308</u> (subd 2) may also be satisfied, as here, by leaving a copy of the summons outside the door of the person to be served upon the refusal of "a person of suitable age and discretion" to open the door to accept it, provided the process server informs the person to whom delivery is being made that this is being done.

*Id.* Similarly, in *Personnel Systems International, Inc. v. Clifford R. Gray, Inc., 146 A.D.2d 831 (3d Dept. 1989)*, the court held that where the person refused to accept service it was proper for the process server to leave the papers in the handle of a screen door after telling the person of his intent to do so. *See also In re Estate of Turecamo, 96 Misc. 2d 120 (Sup. Ct., Nassau County 1978)* [where defendant refused to open door and accept service, process server properly effected service by leaving the papers on the doorstep in view of the defendant].

### That Vosburgh Allegedly Never Received The Papers Is Irrelevant

Finally, Vosburgh's bald assertion that he never received either the papers that were hand-delivered to Wende on April 27, 2018 or the ones that subsequently were mailed to him on May 1, 2018 does not render that service ineffective. Under New York law, proof that papers were mailed creates a presumption that they were received, *Betancourt v. FDIC*, 851 F. Supp. 126, 132 (S.D.N.Y. 1994), and a bald statement by a defendant that he never received papers that were mailed to him by a process server is "insufficient to create an issue of fact and require a traverse hearing," *Caba v. Rai, 63 A.D.3d 578, 583 (1ˢᵗ Dept. 2009).*

Here, Kwiatkowski swears both in his Affidavit of Service and in his subsequent Declaration that on May 1, 2018 he mailed an additional copy of the summons and complaint to Vosburgh at Wende. Kwiatkowski also swears in his Declaration that the envelope in which he mailed the additional copy was never returned. Vosburgh's bald assertion to the contrary is insufficient to undercut the validity of the service under CPLR 308(2).

### At Minimum, The Court Should Extend Plaintiff's Time to Effect Service of Process

Fed. R. Civ. P. 4(m) provides, in pertinent part, as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action **without prejudice** against that defendant or order that service be made within a specified time.

But if the plaintiff shows good cause for the failure, the court **must extend** the time for service for an appropriate period.

[emphasis added].

Recently, in *Pajak v. N.Y. State Office of Temp. & Total Disability*, *2018 U.S. Dist. LEXIS 153096 (W.D.N.Y. 2018),* this Court addressed what constitutes "good cause" under Fed. R. Civ. P. 4(m) and those circumstances under which the court should extend the time to effect service even absent a showing of good cause. The Court noted that "'[g]ood cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.'" *Id. at *11* [citation omitted]. The Court then noted the circumstances under which the time to serve should be extended even absent a showing of good cause:

> Courts use the following factors when evaluating whether to extend the time for service without good cause: (1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service.

*Id. at *12* [citation omitted].

Here, plaintiff has demonstrated the requisite "good cause" requiring an extension of time to effect service on Vosburgh. Specifically, to the extent one can find that timely and proper service was not effected on Vosburgh—and as demonstrated above, no such finding is warranted in this case—any "failure" to effect proper service was the result of circumstances beyond plaintiff's control. Plaintiff was diligent in his efforts to serve Vosburgh, having sent a process server to Vosburgh's regular place of employment well within the ninety-days of the filing of this lawsuit. When he arrived at Vosburgh's place of employment, plaintiff's process

11

server obviously had no control over the conduct of the co-worker who refused to accept service in hand on behalf of Vosburgh. Nevertheless, the process server persisted in his efforts, returning to the facility again to attempt service in hand, leaving the papers in a conspicuous area only after the co-worker again refused to accept service, and then mailing an additional copy of the pleadings to Vosburgh pursuant to CPLR 308(2).

Even were this Court to find that plaintiff has not demonstrated the requisite "good cause" within the meaning of Fed. R. Civ. P. 4(m), plaintiff has demonstrated the presence of all four factors that courts consider in deciding whether to extend the time to serve. First, the statutes of limitations for all of plaintiff's causes of action against Vosburgh have now expired. Second, Vosburgh, both individually and through lawyers acting on his behalf, knew about the claims asserted against him well within the three-year statute of limitations and knew about the service on Vosburgh at Wende well within the 90-day period after plaintiff's lawsuit was filed. *See Exhibit 3 to Sivin Declaration.* Third, it appears that the repeated requests made on behalf of Vosburgh to extend his time to answer were designed to delay any appearance by Vosburgh until after the 90-day period expired while simultaneously concealing from plaintiff any claim by Vosburgh that service on him was defective. Fourth, no prejudice will result to Vosburgh by an extension of time to serve him, since Vosburgh knew about the allegations against him both from the OSI investigation, which commenced in early 2015, and the Claim that was filed in the New York State Court of Claims in October 16, 2015.

It also is clear that plaintiff has meritorious causes of action against Vosburgh. OSI credited plaintiff's claims against Vosburgh—and thus implicitly rejected Vosburgh's denials that he assaulted plaintiff—when it found "overwhelming evidence to corroborate the allegation of inmate James Dallas….being assaulted by staff at Attica Correctional Facility."

Dismissing with prejudice what is presumptively a meritorious lawsuit against Vosburgh therefore would be unjust.

## II.     VOSBURGH'S MOTION TO DISMISS PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION BASED ON DEFENSE OF STATUTE OF LIMITATIONS SHOULD BE DENIED

In moving to dismiss under Fed. R. Civ. P. 12(b) based on a statute of limitations defense, the defendant bears the initial burden of demonstrating that the statute of limitations has expired. *See Vincent v. Money Store, 915 F. Supp. 2d 553, 562 (S.D.N.Y. 2013), citing Romano v. Romano, 19 N.Y.2d 444, 447 (1967).* Here, Vosburgh has failed to satisfy that initial burden with respect to plaintiff's Fifth Cause of Action (State Law Cause of Action for Intentional and Malicious Action) and Sixth Cause of Action (Malicious Abuse of Process), since he has proffered nothing to demonstrate when those causes of action accrued.

Plaintiff's Fifth and Sixth Causes of Action arise not from the April 30, 2015 assault, but from the administrative proceeding and the resulting punishment meted out to plaintiff as a result of the false misbehavior report that was orchestrated by defendants against plaintiff. While Vosburgh correctly notes that these state-law causes of action have a one-year statute of limitations, he incorrectly asserts that these causes of action accrued on April 30, 2015, the date on which plaintiff was assaulted. *See Defendants' Memorandum of Law, p. 13* [asserting that plaintiff was required to commence all three state-law causes of action "within one year from April 30, 2015 – the date of the alleged assault and battery"].

In fact, these causes of action did not accrue, as the earliest, until the administrative proceeding that resulted from the false misbehavior report terminated in plaintiff's favor. *See, e.g., 10 Ellicott Square Court Corp. v. Violet Realty, Inc., 81 A.D.3d 1366, 1368-69 (4th Dept. 2011)* [cause of action for malicious abuse of process does not accrue until the

13

termination of the underlying proceeding].[2]  Since Vosburgh's motion papers do not even allege,

much less demonstrate, when the administrative proceeding terminated or when the punishment

meted out to plaintiff finally terminated, Vosburgh has not met his initial burden of

demonstrating that the statute of limitations with respect to those causes of action had expired as

of the commencement of this lawsuit.  Accordingly, the motion to dismiss plaintiff's Fifth and

Sixth Causes of Action against Vosburgh should be denied.

## <u>CONCLUSION</u>

Based on the foregoing, Vosburgh's motion to dismiss plaintiff's complaint, to

the extent opposed by plaintiff, should be denied in its entirety.

Dated:  New York, New York
          October 29, 2018

Yours, etc.
SIVIN & MILLER, LLP

By _____
     Edward Sivin
Attorneys for plaintiff
20 Vesey St., Suite 1400
New York, NY  10007
(212) 349-0300

---

[2] Under New York's "continuing tort doctrine," the statute of limitations for the causes of action arising out of the punishment meted out to plaintiff as a result of the false misbehavior report may have begun to run only after the termination of all punishment (including plaintiff's time in the SHU and the denial of privileges) that resulted from the false report. *See Shannon v. MTA Metro-North R.R., 269 A.D.2d 218, 219 (1st Dept. 2000)* [holding that the continuing tort doctrine permitted the plaintiff "to rely on wrongful conduct occurring more than one year prior to commencement of the action, so long as the final actionable event occurred within one year of the suit"].